**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**



FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2024 JUL -1  AM 11: 52

MARGARET BOTKINS, CLERK
CASPER

ALLIANZ GLOBAL RISKS US INSURANCE COMPANY,
an Illinois Corporation,

        Plaintiff,

    v.

SKY AVIATION CORPORATION, a Wyoming corporation;
ROB CRAGOE, an individual;
FRAN DUNCAN, an individual;
TERRY DUNCAN; an individual;
CODY EASUM, an individual;
LYLE EVELO, an individual;
DELFINO JUAREZ, an individual;
ROY KENT, an individual;
LEON MILLER, an individual;
BRYON MURRAY, an individual;
VALERIE MURRAY, an individual;
MURRAYMERE FARMS, a partnership;
DAVE NORTHROP, in individual d/b/a NORTHROP FARMS;
RICK RODRIQUEZ, an individual;
JUANITA SAPP, an individual;
MIKE SAPP, an individual;
PAT SAPP, an individual;
REXENE SAPP, an individual;
ROYAL STUKEY, an individual;
JOHN/JANE DOES 1-10;
and XYZ CORPORATIONS 1-10,

        Defendants,

    and

A.S., a minor,

        Intervenor Defendant.

Case No. 22-CV-114-SWS

ROB CRAGOE,

        Crossclaim Plaintiff,

v.

SKY AVIATION CORPORATION,

        Crossclaim Defendant.

---

TERRY DUNCAN and FRAN DUNCAN,

        Crossclaim Plaintiffs and Third-Party Plaintiffs,

v.

SKY AVIATION CORPORATION,

        Crossclaim Defendant,
and

ANDREW PAULSON,

        Third-Party Defendant.

---

## ORDER GRANTING ALLIANZ'S MOTION FOR SUMMARY JUDGMENT AS TO INSURANCE COVERAGE

This matter comes before the Court on Plaintiff Allianz Global Risks US Insurance Company's Motion for Summary Judgment (ECF 118) and supporting brief (ECF 119). Defendant Sky Aviation submitted an opposition thereto (ECF 122), which was joined by Defendants Rob Cragoe, Terry Duncan, and Fran Duncan (ECF 123). The Court held a hearing on the motion on June 18, 2024, where it heard arguments from counsel. Having considered the motion, the parties' arguments, and the record herein, the Court concludes Allianz's motion must be granted.

## INTRODUCTION

Defendant Sky Aviation provides aerial chemical applications, such as herbicide, for agriculture purposes. Sky Aviation is alleged to have inadvertently dispersed herbicide on certain

real property in Park County, Wyoming, when the spray switch in its helicopter failed over multiple days in May 2019, potentially resulting in damage from unintended herbicide releases. Plaintiff Allianz insures Sky Aviation and seeks a summary judgment holding its insurance coverage obligation for the inadvertent chemical releases was limited to $200,000 aggregate under the relevant insurance policy. Sky Aviation, along with some claimants who allege they suffered harm from the unintended chemical releases, oppose Allianz's request for summary judgment, contending the insurance policy provides up to $5 million in coverage for the claims in this case.

## SUMMARY JUDGMENT STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, the Court views the record and all reasonable inferences that might be drawn from it in the light most favorable to the party opposing summary judgment. *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust*, 744 F.3d 623, 628 (10th Cir. 2014). Generally, the moving party has "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)).

## UNDISPUTED FACTS

The issue presented in this summary-judgment motion concerns the interpretation of the insurance policy issued by Allianz, which is a question of law. The relevant facts pertinent to this motion are undisputed. (ECF 119 pp. 4-9; ECF 122 pp. 3-4.)

### *Background*

1.    Sky Aviation is a Wyoming corporation which provides, among other services, aerial application for agriculture.

2.      Allianz issued an Aircraft Insurance Policy to Sky Aviation Corporation, policy number A2GA000355319AM ("the Policy").

3.      The Named Insured is Sky Aviation Corporation.

4.      This case concerns claims arising from aerial application operations from a Sky Aviation helicopter between May 28 through May 31, 2019.

*Procedural History Of This Action*

5.      On May 17, 2022, Allianz initiated this case for Interpleader and Declaratory Judgment against Sky Aviation Corporation and the then-known potential claimants.

6.      Pursuant to Fed. R. Civ. P. 16(a)(1), Allianz amended its Complaint on August 23, 2022, to include three additional potential claimants and to correct a misspelled name.

7.      Defendants Rob Cragoe and Fran and Terry Duncan have asserted claims against Sky Aviation.  The Duncans have also filed a third-party complaint against Andrew Paulson, the helicopter pilot.

8.      Allianz filed its Second Amended Complaint on May 3, 2023, after obtaining leave of court.  Allianz's Second Amended Complaint asserts one count for Declaratory Relief, pursuant to pursuant to 28 U.S.C. § 2201.  Allianz is no longer pursuing interpleader.

9.      Cragoe, the Duncans, and Royal Stukey answered Allianz's Second Amended Complaint.

10.     On June 27, 2023, Jeanie and Royal Stukey moved to intervene on behalf of Jeanie Stukey and A.S., a minor.  This motion was granted.  However, the Court dismissed Jeanie and Royal Stukey's claims based on the statute of limitations.  A.S.'s claims against Sky Aviation were not dismissed.

11.     On June 28, 2023, Defendant David Northrup answered Allianz's Second Amended Complaint.  Northrup has not asserted any claims against Sky Aviation or its agent.

12.     On July 11, 2023, this Court granted in part Sky Aviation and Andrew Paulson's Motion to Sever.  The coverage-based contract claims, particularly including Allianz's request for declaratory judgment on the scope and extent of its coverage duty, have been bifurcated from the liability-based tort claims.

13.     In its Answer to Allianz's Second Amended Complaint dated August 24, 2023, Sky Aviation asserted the policy limit applicable to the incident is $5,000,000.

*The Underlying Claims*

14.     Rob Cragoe has brought claims against Sky Aviation for Negligence and Strict Liability. He claims Sky Aviation or its agent used a helicopter owned by Sky Aviation for the aerial application of chemicals (crop dusting) near his property. He claims the helicopter "sprayed, applied, or otherwise caused toxic chemicals to disburse onto Cross-claimant's property" which caused damage to his trees, plants and crops.

15.     Cragoe was granted leave to file an *Amended Answer to Amended Complaint for Interpleader and Declaratory Judgment and Cross-Claims* on May 10, 2024. The Amended Cross-Claim will add an additional count for Trespass, alleging Sky Aviation and/or its agents intentionally entered upon his property, without permission or consent, "through the migration and accumulation of harmful and/or hazardous and/or caustic and/or carcinogenic and/or poisonous chemicals and compounds on the property", causing physical damages and injuries.

16.     Fran and Terry Duncan have brought claims against Sky Aviation and Third-Party Defendant Paulson for Strict Liability, Trespass, and Negligence. They allege the Sky Aviation helicopter landed on a flatbed truck stationed near their property to refuel, and each time he took off or landed, he flew directly above their property. They also claim that while he was refueling on the truck bed, the wind blew towards their property. They allege that due to the switch malfunction, their property was exposed to Dimethenamid-P and Saflufenacil, components of Verdict, which is known to damage and kill trees and other vegetation, and Roundup Pro, which is known as potentially being a carcinogen.

17.     The Stukeys have brought claims against Sky Aviation on behalf of A.S. for Strict Liability, Trespass, and Negligence. The Complaint in Intervention asserts a Sky Aviation helicopter pilot conducted aerial herbicide spray applications using an improperly functioning spray valve, which resulted in spraying their real property. They claim damage to their real property because plants and trees were defoliated shortly thereafter. They also claim bodily injury damages because they allege A.S. will forever be at a heightened risk for the development of cancers and autoimmune diseases.

*Policy Language*

18.     The Policy had a policy period of May 2, 2019, to May 2, 2020, and was in effect at the time of the Incident.

19.     The Policy provides coverage for Bodily Injury and Property Damage Liability. Under Item 3, Limits of Insurance, the Policy Declarations show a limit of $5,000,000 for each occurrence under Coverage D - Single Limit Bodily Injury and Property Damage Liability (including any and all related claims).

20.     The Insuring Agreements section states in relevant part:

        The Company agrees:

## 1) LIABILITY COVERAGES
* * *

**Coverage D** - Single Limit **Bodily Injury** and **Property Damage** Liability (including any and all **related claims**) - To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of **Bodily Injury** sustained by any person (excluding any **passenger** unless the words "including **passengers**" appear in **Item 3.** of the Declarations) and **Property Damage;**

caused by an **occurrence** and arising out of the ownership, maintenance or use of the **aircraft**; or only with respect to **Coverages A, B,** and **D,** caused by an **occurrence** and arising out of the maintenance or use of the **premises** in or upon which the **aircraft** is stored.

21.     The Policy includes the following Exclusion 9. d):

## EXCLUSIONS

The policy does not apply to any:
* * *
**9) under Coverages A, B, C D** and **E:**
* * *
d) to claims in respect of death, **Bodily Injury,** illness or disease to any person or persons and/or damage to or destruction of property caused by or resulting from the application of or use by the **Insured** or his agent of all forms of fertilizers, fungicides, defoliants, herbicides, hormone selective weed killers, pesticides, insecticides and arsenic preparations or compounds or any other forms of chemical.
* * *

22.     The Policy includes the following definitions:

## DEFINITIONS

"**Aircraft**" means the aircraft described in **Item 4.** of the Declarations and, when appropriate, any aircraft qualifying under the provisions of Special Insuring Agreements **2.**a), b) or c), including the propulsion system and equipment usually installed in the aircraft (1) while installed in the aircraft, (2) while temporarily removed from the aircraft and (3) while removed from the aircraft for replacement until such time as replacement by a similar item has commenced; also tools and equipment which are specially designed for the aircraft and which are ordinarily carried therein.
* * *

"**Bodily Injury**" means physical injury sustained by any person, caused by an **occurrence** during the policy period, including sickness, disease, mental anguish,

and death at any time resulting therefrom. Mental Anguish does not include personal injury.
\* \* \*

"**Insured**" The unqualified word "**Insured**" wherever used in this policy includes not only the **Named Insured** but also any person while using or riding in the **aircraft** and any person or organization legally responsible for its use, provided the actual use is with the express permission of the **Named Insured**. . . .
\* \* \*

"**Named Insured**" means the person or organization named in **Item 1.** of the Declarations.

"**Occurrence**" means an accident, including continuous or repeated accidental exposure to conditions, during the policy period, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**. In the event of continuing or progressive **Bodily Injury** or **Property Damage** otherwise covered by the policy happening over an extended period of time, such **Bodily Injury** or **Property Damage** shall be deemed to be one **occurrence**, and shall be deemed to occur only when such **Bodily Injury** or **Property Damage** first commences.
\* \* \*

"**Property Damage**" means (a) physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period.

23.     The Policy includes an Amendatory Aerial Application Endorsement with an effective date of May 2, 2019, which states as follows in relevant part:

**AMENDATORY AERIAL APPLICATION ENDORSEMENT**

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

The coverage provided under this endorsement shall apply solely as respects the following aircraft:

N20WY

Regardless of anything to the contrary in Exclusion 9. d) of this policy, the Company will pay on behalf of the **Insured** all sums the **Insured** shall become legally obligated to pay as damages because of **bodily injury** or **property damage** resulting from the **aerial application** of **chemicals** applied by the **Named Insured**.

The total limit of the Company's liability for coverage provided by this endorsement shall not exceed the limits stated below:

**LIMITS OF INSURANCE** - The following limits apply only to the **Chemical** category: **CC**.

| | | |
|---|---|---|
| **COVERAGE D**: SINGLE LIMIT | $ 200,000 | Each **Occurrence** |
| **BODILY INJURY** AND **PROPERTY** | $ 200,000 | Aggregate |
| **DAMAGE** EXCLUDING **PASSENGERS** | | |

The Limits of Insurance shown above are part of and not in addition to the Limits of Insurance shown in **Item 3** of the Declarations.

24.     The Endorsement provides the following definitions:

"**Aerial Application**" means the application of **chemicals** by **aircraft** including flights to and from the place the **Insured** will be applying **chemicals**.

"**Chemical(s)**" means any substance or mixture of substances intended to prevent, destroy, repel or mitigate any pest, or any substance or mixture of substances intended for use as a plant or tree regulator, defoliant or desiccant. The common name of a **chemical** includes preparations of the **chemical**, in any form, having a trade or proprietary name.

"**Comprehensive Chemical (CC)**" means seeds, fertilizers, or any **chemical**.

(ECF 119 pp. 4-9 (internal citations omitted).)

A.     The Policy includes a personal injury extension, with an effective date of May 2, 2019, which provides (in relevant part) as follows:

**PERSONAL INJURY EXTENSION**

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

This insurance is extended to cover the **Named Insured's** Legal Liability for damages arising out of aircraft operations sustained by any person arising out of one or more of the following offenses committed during the policy period:

        …

        3. Wrongful entry, eviction or other invasion of the right of private occupancy.

        …

> The Limit of Liability applicable to Personal Injury claims shall be $5,000,000 any one offense and $5,000,000 in the annual aggregate during the policy period being within the overall policy limit and not in addition thereto.

(ECF 122 p. 4 (citation omitted).)

## DISCUSSION

Because this lawsuit depends on diversity jurisdiction, the Court applies Wyoming substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

### 1.   Interpretation of Insurance Policies

Insurance policies are contracts between the insurer and the insured, and they are accordingly interpreted using the standard rules of contract interpretation. *N. Fork Land & Cattle, LLLP v. First Am. Title Ins. Co.*, 362 P.3d 341, 346 (Wyo. 2015). Interpretation, also commonly referred to as "construction," is "the process of ascertaining the meaning of words used to express the intent of the parties." *Id.* (quoting *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023-24 (Wyo. 1993)). The standard rules governing contract interpretation apply to insurance policies, except "that the words used [in the insurance policy] are given the plain meaning that a reasonable person, in the position of the insured, understands them to mean." *Id.* (quoting *Doctors' Co.*, 864 P.2d at 1023-24). Contract interpretation starts, and often ends, with an examination of the language employed by the parties in their contract:

> If the language is unambiguous, our examination is confined to the "four corners" of an integrated contract and [parol] evidence is not admitted to contradict the plain meaning. The language of an insurance policy is ambiguous if it is capable of more than one reasonable interpretation. Because insurance policies represent contracts of adhesion where the insured has little or no bargaining power to vary the terms, if the language is ambiguous, the policy is strictly construed against the insurer. However, the language will not be "tortured" to create an ambiguity.

*Id.* (alteration in original) (quoting *Doctors' Co.*, 864 P.2d at 1023-24 (internal citations omitted)). Interpretation of an insurance policy that is clear and unambiguous is a question of law to be

decided by the Court. *Id.* at 345.

2.     <u>**Summary of the Parties' Dispute**</u>

The parties' contractual dispute here primarily concerns three provisions in the insurance policy issued by Allianz.  The first, which the parties refer to as "Exclusion 9. d)," creates an exclusion to the $5 million coverage generally available under the policy for bodily injury and property damage.  Exclusion 9. d) precludes such coverage for bodily injury or property damage

> caused by or resulting from the application of or use by the **Insured** or his agent of all forms of fertilizers, fungicides, defoliants, herbicides, hormone selective weed killers, pesticides, insecticides and arsenic preparations or compounds or any other forms of chemical.

(ECF 1-2 p. 15 (bold in original as defined terms are bolded in the insurance policy).)  Allianz contends this exclusion applies to the events at issue and precludes the $5 million coverage generally available under the policy.

The second policy provision at issue is the "Amendatory Aerial Application Endorsement," which created coverage to fill the gap created by Exclusion 9. d), at least to a limited extent.  The Amendatory Aerial Application Endorsement created coverage of up to $200,000 per occurrence and in the aggregate for the following:

> Regardless of anything to the contrary in Exclusion 9. d) of this policy, the Company will pay on behalf of the **Insured** all sums the **Insured** shall become legally obligated to pay as damages because of **bodily injury** or **property damages** resulting from the **aerial application** of **chemicals** by the **Named Insured**.

(ECF 1-2 p. 26.)  Allianz argues this endorsement also applies to the events at issue and constitutes the entire extent of coverage available to the claimants.

The third policy provision in dispute is the "Personal Injury Extension."  This endorsement created coverage of up to $5 million as follows:

> This insurance is extended to cover the **Named Insured's** Legal Liability for damages arising out of aircraft operations sustained by any person arising out of

one or more of the following offenses committed during the policy period:

> ...
> 3.       Wrongful entry, eviction or other invasion of the right of private occupancy.

(ECF 1-2 p. 47.)  Sky Aviation, along with Claimants Rob Cragoe, Terry Duncan, and Fran Duncan, contend this endorsement applies at least to the claims of trespass asserted by the claimants against Sky Aviation.

The Court now turns to the applicability of the first two provisions at issue, which must be read together to fully decipher the insurance coverage that might be available for the alleged events in this case as understood by a reasonable insured. *See N. Fork Land & Cattle*, 362 P.3d at 346 ("The intent of the parties is determined by considering the instrument which memorializes the agreement of the parties as a whole.").

### 3.       **Exclusion 9. d) and the Amendatory Aerial Application Endorsement**

Exclusion 9. d) precludes coverage for damage "caused by or resulting from the application of or use ... of" chemicals.  Allianz says Exclusion 9. d) is unambiguous and clearly excludes coverage for the claims in this case because they arise from the use or application of herbicides. (ECF 119 pp. 13-16.)  Sky Aviation argues Exclusion 9. d) does not apply to this case because the allegations all involve Sky Aviation's unintended, accidental, or negligent release of chemicals, whereas the "application" and "use" language of this exclusion means "an application or use of chemicals in the course of their intended use, as opposed to a passive, negligent, or otherwise unintentional or undesired release of chemicals."  (ECF 122 p. 7.)  Sky Aviation contends Exclusion 9. d) applies to "an intended, active utilization" of chemicals and not to the accidental or negligent releases of chemicals asserted in this case.  (*Id.*)  Essentially, Sky Aviation avers its unintentional, accidental, or negligent release of the herbicides cannot be reasonably understood to be the "application of" or "use of" those herbicides.

Sky Aviation's argument carries some preliminary appeal.  The application or use of something generally suggests some intent or affirmative conduct behind the application or use. However, reading the Amendatory Aerial Application Endorsement in relation to Exclusion 9. d) reveals that a reasonable insured would understand that the aerial discharge of chemicals at issue in this case, whether intentional or otherwise, is covered only by the Amendatory Application Endorsement and is excluded from primary coverage by Exclusion 9. d).  The Court finds the relevant language to be unambiguous and will apply the ordinary and usual meaning with no need to look beyond the four corners of the policy.  The relevant part of the endorsement says:

> [T]he Company will pay on behalf of the **Insured** all sums the **Insured** shall become legally obligated to pay as damages because of **bodily injury** or **property damage** resulting from the **aerial application** of chemicals applied by the **Named Insured**.
> ...
>
> "**Aerial Application**" means the application of **chemicals** by **aircraft** including flights to and from the place the **Insured** will be applying **chemicals**.

(ECF 1-2 pp. 26-27.)  The language in the second part of the definition of "aerial application," "including flights to and from the place the Insured will be applying chemicals," can only be reasonably understood to include the inadvertent or unintended release of chemicals.  If an aircraft "applies" chemicals while in flight to the intended crop-dusting destination or while returning from the intended destination, such "application" is quite likely to have been unintentional.  At the least, it could be either intentional or unintentional; thus, this endorsement reasonably applies to both scenarios.  And construing the policy in the manner sought by Sky Aviation would render meaningless the phrase "including flights to and from the place the Insured will be applying chemicals," but the Court must "strive to avoid construing a contract so as to render one of its provisions meaningless, because each provision is presumed to have a purpose."  *Scherer v. Laramie Reg'l Airport Bd.*, 236 P.3d 996, 1003 (Wyo. 2010).

Accordingly, reading the Amendatory Aerial Application Endorsement with Exclusion 9. d), a reasonable insured would understand that Exclusion 9. d) precludes coverage for damages resulting from the application or use of chemicals, whether intentional or otherwise, and that the Amendatory Aerial Application Endorsement fills in the gap in coverage created by the Exclusion 9. d) (in part, at least). The $5 million of coverage generally available under the insurance policy for bodily injury and property damage is excluded by Exclusion 9. d) in this case as to all claims concerning the release of chemicals from the aircraft, regardless of whether the release was accidental or otherwise. To the extent the claims in this case concern the release of chemicals (again, accidental or otherwise) from the aircraft while it was airborne, the Amendatory Aerial Application Endorsement provides coverage for bodily injury or property damage in an amount up to $200,000.

**4.**     **Personal Injury Extension Endorsement**

In the claimants' crossclaims asserted against Sky Aviation, they contend the chemicals allegedly released from Sky Aviation's helicopter trespassed upon their real property and caused damage to and/or the death of vegetation on their land. (*See* ECF 22 pp. 6-7 (the Duncans' crossclaim of trespass); ECF 78 p. 8 (A.S.' crossclaim of trespass); ECF 120 p. 11 (Rob Cragoe's crossclaim of trespass).) "In the real property context, trespasses are 'invasions of the interest in the exclusive possession of land and in its physical condition.'" *Bellis v. Kersey*, 241 P.3d 818, 824 (Wyo. 2010) (quoting *Edgcomb v. Lower Valley Power & Light*, 922 P.2d 850, 859 (Wyo. 1996)).

In response to Allianz's motion for summary judgment, Sky Aviation and the claimants also contend the trespass claims are covered by a separate endorsement—the "Personal Injury Extension." (ECF 122 pp. 4-6; ECF 123 pp. 2-3.) The Personal Injury Extension endorsement

states in relevant part:

> This insurance is extended to cover the **Named Insured's** Legal Liability for
> damages arising out of aircraft operations sustained by any person arising out of
> one or more of the following offenses committed during the policy period:
>
> ...
>
> 3.      Wrongful entry, eviction or other invasion of the right of private
>         occupancy.
>
> ...
>
> The Limit of Liability applicable to Personal Injury claims shall be $5,000,000 any
> one offense and $5,000,000 in the annual aggregate during the policy period being
> within the overall policy limit and not in addition thereto.

(ECF 1-2 p. 47.)

For a couple of reasons, this endorsement does not do the work desired by Sky Aviation

and the claimants.  First, the Personal Injury Extension, as its name implies, is limited to coverage

for personal injury claims, not property damage.  It covers liability for damages "sustained by any

person" and its limit of $5 million is "applicable to Personal Injury claims."  (*Id.*)  The term

"personal injury" is not defined in the insurance policy.[1]  (*See* ECF 1-2 pp. 8-10.)  The Merriam-

Webster Dictionary defines it as "an injury to one's body, mind, or emotions," and "an injury that

is not to one's property."  *Personal injury*, Merriam-Webster.com Legal Dictionary,

https://www.merriam-webster.com/legal/personal%20injury, accessed June 18, 2024.  This

common, everyday meaning of "personal injury" accords with the provision's "sustained by any

person" language, and the Court has not been provided any basis to construe "personal injury"

beyond its ordinary meaning.  Thus, the Personal Injury Extension provides coverage for injuries

sustained by a person to their body, mind, or emotions, but it does not provide coverage for injuries

to their property.  Applied here, the Personal Injury Extension cannot provide coverage for any of

---

[1] Somewhat confusingly, the term is capitalized within the Personal Injury Extension Endorsement, but it is not bolded
or defined anywhere in the policy.

the claimants' alleged damage to property, such as defoliation or death of vegetation.

Some of the claimants at least intimate they have suffered emotional distress due to the alleged loss of their trees and damage to their property. (*See, e.g.*, ECF 20 p. 3 (the Duncans' assertions concerning their emotional attachments to their property).) While "personal injury" can include emotional distress or mental anguish types of harm, such damages "in connection with property damages are not compensable" under Wyoming law unless also accompanied by physical injury. *Cardenas v. Swanson*, 531 P.3d 917, 921 (Wyo. 2023) (quoting *Blagrove v. JB Mech., Inc.*, 934 P.2d 1273, 1275 (Wyo. 1997)); *see Stellar v. Bischoff*, No. 07-CV-24-J, 2007 WL 9710251, at *12 (D. Wyo. June 25, 2007) (granting dismissal of certain claims because Wyoming law "preclude[es] recovery of emotional distress damages in connection with property losses"). In other words, incorporating the language of the Personal Injury Extension, suffering emotional distress caused by the damage to or destruction of one's property does not create "legal liability," at least not under Wyoming law. Thus, while the Court has no reason to doubt the asserted mental anguish/emotional distress experienced in response to damage to one's property (e.g., defoliation and/or death of various vegetation), the Personal Injury Extension does not provide coverage for such mental anguish/emotional distress damages because they are not compensable under Wyoming law and cannot underlie Sky Aviation's "legal liability" for such damages (to the extent they may be claimed).

Second, Exclusion 9. d) and the Amendatory Aerial Application Endorsement's references to the application of chemicals are much more specific to the alleged events in this case than is the Personal Injury Extension reference to wrongful entry, and more specific contract terms control over general terms. *See Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 393 P.3d 1279, 1294 (Wyo. 2017) ("general terms in a contract yield to specific terms if the two are not reconcilable").

The general reference to the "offense" of "wrongful entry" cannot create $5 million in coverage for events involving the release of chemicals where such coverage is specifically limited to $200,000 by Exclusion 9. d) and the Amendatory Aerial Application Endorsement. Such an interpretation would effectively ignore or nullify the coverage limitations of Exclusion 9. d) and the Amendatory Aerial Application Endorsement, which would constitute an improper contract interpretation because the Court must "strive to reconcile by reasonable interpretation any provisions which apparently conflict before adopting a construction which would nullify any provision." *Wells Fargo Bank Wyoming, N.A. v. Hodder*, 144 P.3d 401, 409 (Wyo. 2006). A reasonable person in the position of the insured would not understand the Personal Injury Extension to control coverage concerning the release of chemicals over the more specific Exclusion 9. d) and Amendatory Aerial Application Endorsement, and interpreting the policy in the manner advocated by Sky Aviation and the claimants would violate these standards of contract interpretation.[2]

## CONCLUSION AND ORDER

When read together, the Amendatory Aerial Application Endorsement and Exclusion 9. d) preclude the policy's general $5 million coverage from applying to the claims concerning the release of chemicals from the aircraft (accidental or otherwise), and the Amendatory Aerial Application Endorsement offers coverage up to $200,000 for the claims concerning the release of chemicals from the aircraft while airborne. Additionally, the Personal Injury Extension does not apply to property damages and associated mental anguish, nor does it control over the more

---

[2] Though not addressed by the parties, the claims of A.S. are a bit different from an analytical perspective, but the result is the same. A.S. complains he developed swelling patches of skin and stomach illness during and after the nearby herbicidal spraying activities of Sky Aviation. (ECF 78 pp. 6-7.) And he seeks to recover for the damages resulting from the alleged trespass (*id.* p. 8), which could arguably include these assertions of physical injury (in other words, his claims are not limited to property damages). But again, the Personal Injury Extension cannot reasonably and fairly be read to overcome the limitations of coverage for the release of chemicals expressly set out elsewhere in the policy.

specific coverage limitations relating to the release of chemicals found in Exclusion 9. d) and the Amendatory Aerial Application Endorsement.

**IT IS THEREFORE ORDERED** that Plaintiff Allianz Global Risks US Insurance Company's Motion for Summary Judgment (ECF 118) is **GRANTED**. Exclusion 9. d) precludes general policy coverage for the claims of release of chemicals from the aircraft, whether accidental or otherwise. The Amendatory Aerial Application Endorsement provides coverage up to $200,000 for the claims of release of chemicals from the aircraft while airborne. Finally, the Personal Injury Extension does not provide coverage for damage to property or associated mental anguish arising out of trespass, and it cannot be read to nullify the coverage limitations for the release of chemicals more specifically addressed in Exclusion 9. d) and the Amendatory Aerial Application Endorsement.

**ORDERED**: July _____, 2024.

Scott W. Skavdahl
United States District Judge